■ In the Matter of FURMAN M. JONES, Petitioner, against JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Respondent.— Proceeding under article 78 of the Civil Practice Act to review a determination of the Commissioner of Education. The petitioner is a physician

whose license to practice medicine has been revoked by direction of the Board of Regents under recommendation of the Medical Committee on Grievances after a hearing. The charge of professional misconduct is that petitioner had been convicted of the crime of assault in the third degree. The statute, Education Law (§ 6514, subd. 2, par. [b]) provides that a license to practice medicine may be revoked where the physician " has been convicted * * * of a crime ". Where the conviction of crime is for a misdemeanor which might or might not bear upon the professional work of the physician, the Medical Committee on Grievances is justified in examining into the background and circumstances of the conviction to determine if discipline is warranted. The petitioner's conviction was entered upon his plea of guilty to assault third degree, accepted by the County Court of Bronx County on recommendation of the District Attorney, under an indictment charging abortion on two counts. Petitioner denied in his testimony before the committee that he had committed an abortion. The plea to assault third degree did not amount to an admission of abortion or of an attempt to commit abortion; but it must be regarded as an admission of some unlawful physical or medical procedure in relation to the pregnant woman named in the indictment; and there is no doubt in the record made before the committee that this was done in the course of petitioner's professional practice. The committee's conclusion that the petitioner had been guilty of a crime within the purview of the Education Law authorizing discipline, therefore, seems warranted. Although petitioner denied in his testimony before the committee that he had aborted the pregnant woman, he testified that he had used medical procedures that could have caused miscarriage had one not already occurred, and that when he saw the patient he could not tell whether there had already been a miscarriage. The committee could readily have found on the record that petitioner had received a fee of $130 for this single house call and that the fee was left in cash on the seat of his automobile by a man who had called him to see the patient described to petitioner as " in trouble ". The committee could also have found that the petitioner had paid $150 in cash to extortioners and had promised them $1,000 more because of his fears arising from the treatment of this patient. His explanation was that "knowing the type of case I had there, I could have gone in behind someone who had done something to this patient and I didn't know whether I had been involved in that or not ". In answer to a further question whether he thought the extortioners might have accused him of having performed an abortion he said: " That's possible ". It could also have been found from proof in the record that petitioner had given money to the man who had called him to treat the patient. In view of the plea to a crime of assault arising under an indictment charging abortion and of the petitioner's own explanation of the circumstances of his treatment of the patient, the committee was within its power in determining that his conviction for crime warranted discipline. We do not find a basis in the record for determining that the discipline should be different from that which the Regents have imposed on recommendation of the Medical Grievance Committee. The argument that petitioner did not have a fair hearing is not sustained on the record. Determination unanimously confirmed, without costs. Present — Foster, P. J., Bergan, Coon, Halpern and Gibson, JJ.